Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



★   ★   ★                                                                ★   ★   ★

# MEMORANDUM OPINION

No. 04-08-00100-CV

Kenneth B. **CHANDLER** and Anna J. Chandler,
Appellants

v.

**FORD MOTOR CREDIT COMPANY, LLC** and North Park Lincoln Mercury,
Appellees

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2007-CI-10667
Honorable Michael P. Peden, Judge Presiding

Opinion by:    Rebecca Simmons, Justice

Sitting:       Karen Angelini, Justice
               Rebecca Simmons, Justice
               Steven C. Hilbig, Justice

Delivered and Filed:   March 4, 2009

AFFIRMED

Kenneth and Anna Chandler appeal from a final judgment confirming an arbitration award in favor of Ford Motor Credit Company (Ford Credit) and North Park Lincoln Mercury (North Park). Contending that the arbitrator manifestly disregarded the law, the Chandlers challenge the trial court's denial of their motion to vacate the arbitration award. We affirm the judgment of the trial court.

**FACTUAL BACKGROUND**

This case arises out of a lease agreement for a 2002 Lincoln LS. The Chandlers, lessees, and North Park, lessor, executed the lease in August of 2002 with Ford Credit as the holder and assignee of the lease. The lease obligated the Chandlers to make thirty-six monthly payments to Ford Credit. Upon failure to make a timely payment, the default provision gave Ford Credit the right to repossess and sell the vehicle. An arbitration provision provided that all disputes were subject to the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16 (2006), and would be submitted to the American Arbitration Association (AAA) or another association agreed upon by the parties.

The Chandlers experienced brake problems with the vehicle from the beginning of the lease. Following a series of attempted brake repairs, the Chandlers refused to make the February 2005 payment. In March 2005, the Chandlers returned the vehicle to North Park for additional brake repairs. More than two weeks later, the Chandlers informed Ford Credit that they would not make further lease payments because of the continuing brake problems and notified North Park that they would not retrieve the vehicle.

In early April 2005, Ford Credit sent the Chandlers a Notice of Default and Right to Cure, requiring them to pay the February and March lease payments along with a late fee. The Chandlers contacted Ford Credit regarding the overdue payments on April 14th. Ford Credit faxed a Lease Extension Agreement the same day that provided the February, March, and April payments would be extended to August, September, and October, respectively. Under the offer, the next lease payment would be due on May 28, 2005.

On April 19, 2005, five days after receipt of the extension, the Chandlers returned the signed agreement with the following note:

> I want to be certain that by signing the documents I am not re-obligating myself to the terms that I am disputing. Per our conversation, the purpose of the extension is to "buy-time" in which a solution could be reached while protecting my valuable reputation and credit-worthiness. If this is not true, please disregard this request.

That same day, Ford Credit revoked the offer and repossessed the vehicle due, in part, to the Chandlers' nonpayment and their abandonment of the vehicle. Ford Credit did not give notice of either the revocation or the repossession.

In November 2006, the Chandlers filed claims against Ford Credit and North Park with AAA, alleging Ford Credit breached the contract by wrongfully repossessing the vehicle and asserting other causes of action. The Chandlers claimed that they were not in default because the parties executed the payment extension agreement. Ford Credit filed a counterclaim denying the validity of the payment extension agreement and asserting the Chandlers abandoned the vehicle. North Park filed an answer denying all of the allegations.

The arbitration hearing was scheduled for May 22, 2007. The Chandlers did not appear at the hearing and made no effort to reschedule the hearing. Nine days later, the Chandlers requested the hearing be reopened. The arbitrator agreed and ordered all evidence submitted by June 25, 2007. On June 27, 2007, two days after the arbitration deadline, the Chandlers submitted approximately 500 pages of documents. After considering the testimony and evidence submitted by Ford Credit and North Park, and all of the materials submitted by the Chandlers, the arbitrator found that the Chandlers did not accept the payment extension offer prior to Ford Credit's revocation and were in default at the time of repossession.

In a detailed, lengthy, written opinion, the arbitrator detailed the Chandlers' requested damages and their failure to submit proof with regard to each. Additionally, the arbitrator explained:

> [The Chandlers] failed to prove their alleged loss of income through the documents submitted. At best, [the Chandlers] showed that they had credit problems. However, they failed to show that their credit problems were caused by the actions of any of the responding parties.
>
> . . . .
>
> Although [the Chandlers] showed that mental duress was unquestionably caused by the stress of this years-long dispute, [the Chandlers] failed to show that the responding parties were the cause.

In summarizing his findings, the arbitrator concluded:

> [A]lthough it is clear that [the Chandlers] were frustrated, frightened, and angry about their difficulty in obtaining brake repairs on the Vehicle from [North Park], these emotional states do not constitute the types of injuries that would support the damages in contract, tort, or statute that they seek, with the sole exception of the $784.07 for loss of personal items.[1]

Accordingly, the arbitrator denied all of the Chandlers' remaining claims and awarded Ford Credit damages of $3,587.26 plus attorney's fees of $1,500.00.

In July 2007, Ford Credit filed a petition to confirm the arbitration award with the trial court. In response, the Chandlers filed a petition to vacate the award, citing the arbitrator's manifest disregard of the law. North Park later intervened as a party to the arbitration, requesting confirmation of the award. On November 15, 2007, the trial court rendered a final judgment confirming the award and denying the Chandlers' request to vacate. The Chandlers appeal the trial court's confirmation of the arbitration award.

## STANDARD OF REVIEW

The parties agree that the FAA applies to this case. *See* 9 U.S.C. §§ 1–16 (2006). Under the FAA, we review the trial court's confirmation of the arbitration award de novo. *GJR Mgmt. Holdings, L.P. v. Jack Raus, Ltd.*, 126 S.W.3d 257, 262 (Tex. App.—San Antonio 2003, pet. denied). "In Texas, review of arbitration awards is extraordinarily narrow." *Id.* Both the trial

---

[1] Prior to the Chandlers filing their arbitration claim, Ford Credit agreed to compensate the Chandlers for the loss of the personal items left in the repossessed vehicle.

court and the appellate court are required to indulge every reasonable presumption to uphold the arbitration award. *Massey v. Galvan*, 822 S.W.2d 309, 316 (Tex. App.—Houston [14th Dist.] 1992, writ denied) (citation omitted). This deference afforded to the arbitration award acknowledges the court's desire to prevent "'disappointed litigants [from] seek[ing] to overturn every unfavorable arbitration award in court.'" *Crossmark, Inc. v. Hazar*, 124 S.W.3d 422, 429 (Tex. App.—Dallas 2004, pet. denied) (quoting *Daniewicz v. Thermo Instrument Sys., Inc*., 992 S.W.2d 713, 716 (Tex. App.—Austin 1999, pet. denied)).

Relying on several Fifth Circuit cases, the Chandlers assert that a court may vacate an award (1) if the award is the result of the arbitrator's manifest disregard of the law, or (2) if the award is contrary to public policy. *Myer v. Americo Life, Inc.*, 232 S.W.3d 401, 408 (Tex. App.—Dallas 2007, no pet.) (citing Fifth Circuit cases); *see also Roehrs v. FSI Holdings, Inc.,* 246 S.W.3d 796, 814 (Tex. App.—Dallas 2008, pet. denied) (relating federal courts' "'severely limited'" standard of review for setting aside arbitration awards based on manifest disregard of the law).

Although certain common law exceptions have been recognized by prior courts, the United States Supreme Court recently clarified the standard in *Hall Street Associates, L.L.C. v. Mattel, Inc.* providing that the statutory grounds for judicial vacatur and modification, or correction of an arbitration award, are exclusive and may not be supplemented by contract. *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 128 S. Ct. 1396, 1403 (2008); *see also* 9 U.S.C. §§ 10, 11 (2006). In *Hall Street*, the Supreme Court reiterated that the basic tenets of the FAA are "at odds with enforcing a contract to expand judicial review following the arbitration." *Hall Street*, 128 S. Ct. at 1404.

More importantly, *Hall Street* specifically overruled vacatur based on "manifest disregard" explaining that the lower courts' previous determinations based on the arbitrator's manifest disregard of the law were based on a misreading of the Court's opinion in *Wilko v. Swan*, 346 U.S. 427 (1953). *Hall Street*, 128 S. Ct. at 1404. Texas courts have also adopted the *Hall Street* holding. *Wood v. Penntex Res. LP*, No. H-06-2198, 2008 WL 2609319, at *8 n.4 (S.D. Tex. June 27, 2008) (recognizing that *Hall Street* overruled "manifest disregard of the law" as an independent basis for vacatur); *Quinn v. Nafta Traders, Inc.*, 257 S.W.3d 795, 798 (Tex. App.—Dallas 2008, pet. filed) (adopting the principles reflected in *Hall Street*).

An application to the trial court to affirm an arbitration award must be granted "'unless the award is vacated, modified, or corrected.'" *See Hall Street*, 128 S. Ct. at 1405 (quoting 9 U.S.C. § 9 (2006)). In order to vacate an arbitration award under the FAA, the challenger must satisfy one of the statutory grounds set forth in the FAA: (1) the award was fraudulently procured, (2) there was evidence of partiality or corruption of the arbitrator, (3) the arbitrator was guilty of misconduct that prejudiced the rights of a party, or (4) "the arbitrator [] exceeded [the arbitrator's] powers, or so imperfectly executed them that a . . . definite award . . . was not made." 9 U.S.C. § 10(a) (2006).

## VACATING AN ARBITRATION AWARD

In their brief, the Chandlers contend that this court should vacate the arbitration award because of the arbitrator's manifest disregard of the law. The brief provides no discussion, legal authority, or analysis to support their position under the applicable standards of the FAA *after Hall Street*. The Chandlers contend the arbitrator should have based his decision on their acceptance of Ford Credit's offer evidenced by the Chandlers' counteroffer. They claim that the arbitrator knew that Ford Credit's revocation was invalid, but ignored the law of contracts by

awarding damages in spite of a valid revocation. The Chandlers' basis for revoking the arbitration award does not fall within the statutory grounds under the FAA.

## CONCLUSION

Under our "extraordinarily narrow" review, as defined by *Hall Street*, the Chandlers failed to meet their burden of demonstrating any of the statutory grounds set forth in the FAA. *See* 9 U.S.C. § 10(a) (2006). Accordingly, the judgment of the trial court confirming the Award of Arbitrator is affirmed.[2]

Rebecca Simmons, Justice

---

[2] Because our holding is dispositive of this appeal, we need not address the Chandlers' second issue (sufficiency of the record). *See* TEX. R. APP. P. 47.1 (encouraging concise opinions addressing only those issues "necessary to final disposition of the appeal").