# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00549-CV

**Harvey Vorwerk, deceased, by and through his representative Jane Vorwerk, Appellant**

**v.**

**Williamson County Grain, Inc., Appellee**

**FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT
NO. 08-1072-C26, HONORABLE BILLY RAY STUBBLEFIELD, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Appellant Harvey Vorwerk, by and through his representative Jane Vorwerk, appeals the trial court's judgment confirming an arbitration award in favor of appellee Williamson County Grain, Inc. in a breach-of-contract dispute. In two issues on appeal, Vorwerk argues that the trial court erred in confirming the arbitration award because: (1) the arbitration panel engaged in procedural misconduct by conducting an ex parte communication with Williamson County Grain, and (2) the arbitration award violated public policy because it conflicts with several provisions of the Texas Business and Commerce Code. We will affirm the trial court's judgment.

## BACKGROUND

On April 11, 2007, Harvey Vorwerk entered into a contract with Williamson County Grain providing that Vorwerk would deliver 60,000 bushels of grain by the end of August 2008 in

exchange for $3.90 per bushel.[1] The contract established that Vorwerk would be paid a discounted price per bushel for loads with an aflatoxin level between 21 and 300 parts per billion.[2] Also on April 11, 2007, Williamson County Grain contracted to sell 53,571 bushels of grain to Bee Agricultural Company for $4.16 per bushel.[3] Williamson County Grain alleges that it was relying on its contract with Vorwerk to supply the grain to fulfill its contract with Bee Agricultural Company. According to Williamson County Grain, by September 6, 2008, Vorwerk had delivered only 3,457.46 bushels of grain that met the quality standard specified in the contract, leaving undelivered 56,542.54 bushels of the agreed-upon 60,000.[4] Williamson County Grain asserts that it was unable to purchase grain locally on the open market at the contract price of $4.16 per bushel when Vorwerk failed to deliver. Instead, it was forced to buy back its contract, i.e., the 53,571

---

[1] The facts recited herein are taken from the record on appeal, including the testimony and exhibits admitted at the hearings on various motions. We accept as true facts stated in the briefs that are uncontradicted by another party. Tex. R. App. P. 38.1(g).

[2] The agreed price was $3.80 per bushel for grain with an aflatoxin level between 21 and 100 parts per billion and $3.70 per bushel for grain with an aflatoxin level between 101 and 300 parts per billion. The contract specified that grain with an aflatoxin level of more than 300 parts per billion would not be accepted.

[3] The contract between Williamson County Grain and Bee Agricultural contained the same ten-cent per-bushel discount for grain with an aflatoxin level between 21 and 100 parts per billion and twenty-cent per-bushel discount for grain with an aflatoxin level between 101 and 300 parts per billion, which would reduce the per-bushel prices Bee Agricultural paid for the grain to $4.06 and $3.96, respectively.

[4] Although Williamson County Grain asserted that the grain delivered by Vorwerk totaled 3,457.46 bushels, leaving undelivered 56,542.54 bushels, the arbitration award indicates that the arbitration panel concluded that Vorwerk delivered 3,467.86 bushels, leaving undelivered 56,532.14 bushels. We will use Williamson County Grain's numbers when setting forth the factual background because those numbers are the basis for Williamson County Grain's damages claim, but will note where they differ from the numbers relied upon by the arbitration panel.

2

bushels that it had contracted to provide to Bee Agricultural, from Bee Agricultural at the then current price of $5.67 per bushel.[5]

Williamson County Grain sued Vorwerk for actual damages and attorney's fees based on his breach of the April 2007 contract. It sought damages in the amount of $100,080.30, which is equal to the $1.77 difference in the $3.90 per-bushel price of the Vorwerk contract and the $5.67 per-bushel market price multiplied by Williamson County Grain's calculation of 56,542.54 undelivered bushels. Vorwerk, appearing pro se, filed an answer and motion to abate, requesting that the matter be arbitrated by the Texas Grain and Feed Association (TGFA).[6] Williamson County Grain agreed to arbitration, and the trial court abated proceedings pending arbitration. The TGFA held an arbitration hearing on December 15, 2009. Representatives and witnesses for Williamson County Grain were present, but neither Vorwerk nor any representative on his behalf attended the hearing.

The day after the arbitration hearing, a telephone call took place between Joe Mueck, the general manager of Williamson County Grain, and Ben Boerner, the president of the TGFA. It is undisputed that, following this call, Mueck faxed Boerner a summary showing his calculation that Vorwerk had delivered 3,457.46 bushels of grain that were accepted under the contract and that

---

[5] Williamson County Grain stated in its arbitration petition that the $5.67 market price upon which it based its calculations did not "include the 'in and out fee' of $0.25, which was deducted from the buy back price." The arbitration award, however, indicates that the arbitration panel included the $0.25 in-and-out fee in the market price upon which it based its calculations, resulting in its use of $5.92 per bushel as the market price for Williamson County Grain's buy back of the Bee Agricultural contract.

[6] The contract contained a provision specifying that "this contract is subject to the rules and regulations of the Texas Grain and Feed Association." It is undisputed that the TGFA's rules and regulations allow disputes arising out of grain transactions to be arbitrated.

the price differential of $1.77 per bushel multiplied by 56,542.54 undelivered bushels equals $100,080.30.[7] The parties disagree, however, as to the facts surrounding this communication. According to Williamson County Grain, Mueck called Boerner to ask whether the arbitration panel had reached a decision, and Boerner informed him that the arbitration panel had not yet done so. Boerner then requested that Mueck fax him a summary of the amount Williamson County Grain owed Vorwerk for the grain that had been delivered and accepted, so that the amount owed could be subtracted from the arbitration award.[8] Conversely, Vorwerk contends that the panel, acting through Boerner, initiated a call to Mueck to request more information about the amounts, times, and dates of the deliveries. The parties also disagree as to whether the information in the fax was new to the arbitration panel or merely a summary of information presented at the arbitration hearing. On December 21, 2009, the arbitration panel issued an award in favor of Williamson County Grain for monetary damages in the amount of $106,056.26.

Williamson County Grain subsequently filed a motion to confirm the arbitration award with the district court, citing the Texas General Arbitration Act (TAA). *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.087 (West 2011) (providing that court shall confirm arbitration award upon party's application unless grounds are offered to vacate, modify, or correct award). It attached to its motion the parties' executed TGFA form agreements to arbitrate, the notice of arbitration hearing sent to Vorwerk, and the arbitration award. The arbitration panel determined that the Vorwerk

---

[7] The appellate record includes this fax. The fax indicates that 3,457.46 bushels of grain had been delivered and accepted, but it does not state the total dollar amount owed to Vorwerk.

[8] Boerner was not a member of the arbitration panel. Williamson County Grain, therefore, contends that the record does not support the inference that the fax was actually seen by the arbitration panel itself.

contract cancellation resulted in an amount of $114,194.92 due to Williamson County Grain, which was calculated by multiplying 56,532.14 undelivered bushels by $2.02 (the cancellation differential of $5.92 per bushel purchased from Bee minus the Vorwerk contract price of $3.90 per bushel). The panel also deducted $13,112.47 from the award for the four loads of grain that Vorwerk had delivered and that had been accepted, but not paid for, by Williamson County Grain.[9] The panel then added on four-percent interest due to Williamson County Grain and deducted four-percent interest due to Vorwerk to arrive at its total of $106,056.26.

A hearing on the motion to confirm the arbitration award was held as scheduled, on February 19, 2010.[10] Vorwerk, who had been battling cancer since 2006 and was undergoing treatment for his condition at the time of these proceedings, did not appear at the hearing or file a response to Williamson County Grain's motion. The trial court confirmed the arbitration award in favor of Williamson County Grain.

On March 22, 2010, acting pro se, Vorwerk filed a motion for new trial. Vorwerk passed away on March 29, 2010. Vorwerk's estate hired counsel to represent the estate's interest in this matter before the hearing on Vorwerk's motion for new trial, which occurred on May 4, 2010. After hearing evidence on Vorwerk's illness at the hearing on his motion for new trial, the trial court conditionally granted the motion to give Vorwerk the opportunity to respond to Williamson County

---

[9] The panel calculated these bushels at the discounted prices for certain aflatoxin levels: 2,813.93 bushels at $3.80 per bushel and 653.93 bushels at $3.70 per bushel, for a total of 3,467.86 bushels delivered. This number differs slightly from the 3,457.46 bushels that Mueck indicated in the fax to Boerner was the total number delivered by Vorwerk.

[10] The only exhibit admitted into evidence at this hearing was the notice of hearing that Williamson County Grain sent to Vorwerk.

Grain's motion to confirm the arbitration award. Vorwerk filed a motion to vacate the award a few days before the second hearing on the motion to confirm the award, which occurred on June 22, 2010.[11] With its response to the motion to vacate, Williamson County Grain attached its notice to Vorwerk of the first confirmation hearing; an April 29, 2010 email from Vorwerk's wife to Boerner; the fax from Mueck to Boerner; and its arbitration petition with attached exhibits, including the contract between the parties, its contract with Bee Agricultural, its receipts showing Vorwerk's deliveries of grain that were accepted, and documents showing its buy back of grain from Bee. The only exhibits admitted into evidence at this hearing were the fax from Mueck to Boerner and a delivery receipt from Williamson County Grain to Vorwerk showing deliveries of grain by Vorwerk in December 2007.[12] After the hearing, the trial court denied Vorwerk's motion to vacate and confirmed the arbitration award.[13] Vorwerk now appeals.

---

[11] Vorwerk's motion to vacate was not included in the record on appeal.

[12] Counsel for Vorwerk argued that under a prior contract Williamson County Grain had accepted late deliveries of grain, and this acceptance of late deliveries was evidence of the parties' course of dealing.

[13] Although the trial court verbally denied the motion at the second hearing on Williamson County Grain's motion to confirm the award, no written order denying the motion to vacate appears in the record. The trial court's judgment states that after a hearing on the motion to confirm, the court "is of the opinion that judgment should be rendered for [Williamson County Grain] in accordance with the Arbitration Award" and "all relief not expressly granted herein is denied." Vorwerk appeals from "the trial court order entering Plaintiff's Motion to Confirm Arbitration Award."

6

## APPLICABLE LAW

As a threshold matter, we must determine what law governed the arbitration—the Federal Arbitration Act (FAA) or the TAA or both.[14]  *See* 9 U.S.C.A. §§ 1-16 (2009); Tex. Civ. Prac. & Rem. Code Ann. §§ 171.001-.098 (West 2011).  Vorwerk contends that the FAA preempts the TAA and governed the arbitration, particularly with regard to his assertion of arbitrator misconduct.[15]  Williamson County Grain disagrees that the FAA preempts the TAA, but argues that under either standard, no grounds exist to vacate the arbitration award.  The parties do not dispute that the arbitration agreement was valid and binding, and they agree that the TGFA's rules governed the arbitration.  The parties also do not dispute that the TGFA's constitution grants the TGFA arbitrators all the power and jurisdiction granted to arbitrators by the FAA, the TAA, and common law.[16]

---

[14]  The record does not indicate whether the arbitration was conducted under the FAA or the TAA.

[15]  Although Vorwerk also asserts in his second issue (without citation to any supporting authority) that the panel's award violated FAA rules because the panel made "gross mistakes" and the award violates public policy, there is no provision in the FAA (or in the TAA) that allows an award to be vacated for "gross mistake" or violation of public policy.  *See* 9 U.S.C.A. § 10 (West 2009).  These are both common-law arguments for vacating an award.  *See CVN Grp., Inc. v. Delgado*, 95 S.W.3d 234, 237 (Tex. 2002) (violation of public policy); *House Grain Co. v. Obst*, 659 S.W.2d 903, 905 (Tex. App.—Corpus Christi 1983, writ ref'd n.r.e.) (gross mistake).

[16]  Although Vorwerk included the TGFA's constitution as an appendix to his brief and Williamson County Grain also refers in its brief to the constitution attached to Vorwerk's brief, the constitution is not part of the appellate record.  *See* Tex. R. App. P. 34.1 (appellate record consists of clerk's record, and if necessary to appeal, reporter's record).  The attachment of documents as exhibits or appendices to briefs is not formal inclusion in the record on appeal, and thus, we cannot consider the document itself.  *See Perry v. Kroger Stores Store No. 119*, 741 S.W.2d 533, 534 (Tex. App.—Dallas 1987, no writ).  However, we accept as true facts stated in the briefs that are uncontradicted by another party.  *Id.* at 535; *see also* Tex. R. App. P. 38.1(g).  Williamson County Grain does not dispute Vorwerk's assertion that the TGFA constitution provides its arbitrators with

7

The TAA applies to written agreements to arbitrate unless the agreement is excluded from coverage by section 171.002 of the TAA, or the parties agree to proceed under the FAA. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 171.001, .002; *see also Volt Info. Scis., Inc. v. Board of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 472 (1989) (parties are free to specify in arbitration agreement which statute shall apply to proceedings). Vorwerk does not contend that the arbitration agreement is excluded from coverage under the TAA; instead, he argues that federal law regarding arbitrator misconduct as a ground for vacating an award should apply in this case.[17] But Vorwerk has not cited any specific provision of the FAA upon which he relies that is contrary to the TAA, and the FAA preempts only *contrary*, not consonant, state law. *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 779 (Tex. 2006) (noting that state law that undermines FAA's policies and goals is preempted (citing *Volt Info. Scis., Inc.*, 489 U.S. at 477-78)). Moreover, the FAA only preempts state-law impediments to arbitration agreements, not all inconsistent state law relating to arbitration. *Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 98-100 (Tex. 2011).

When an arbitration agreement provides for arbitration under both the FAA and the TAA or can be interpreted as invoking both acts, both the FAA and the TAA may apply. *Id.* at 97 n.64; *In re D. Wilson Constr. Co.*, 196 S.W.3d at 778-79. The FAA preempts the TAA only when the following four factors are present: (1) the agreement is in writing, (2) it involves interstate commerce, (3) it can withstand scrutiny under traditional contract defenses, and (4) state law affects

powers and jurisdiction under the FAA; it disputes Vorwerk's assertion that the FAA preempts the TAA in this case.

[17] Vorwerk, however, relies on Texas law and the TGFA's rules, in addition to federal law, to support his contentions concerning arbitrator misconduct.

the enforceability of the agreement. *In re D. Wilson Constr. Co.*, 196 S.W.3d at 780. In this case, the agreement is in writing, and we will assume without deciding that it involves interstate commerce. *See In re Nexion Health at Humble, Inc.*, 173 S.W.3d 67, 69 (Tex. 2005) (per curiam) ("The FAA 'extends to any contract affecting commerce, as far as the Commerce Clause of the United States Constitution will reach.'"). Neither party has asserted any traditional contract defense against enforcement of the arbitration agreement. Nor has either party asserted anything in the TAA that would subvert enforcement of the arbitration agreement, such as an express exemption of the agreement from coverage or an enforceability requirement in the TAA that is not found in the FAA. *See In re D. Wilson Constr. Co.*, 196 S.W.3d at 780. Therefore, the FAA does not preempt the TAA in this case.

Williamson County Grain sought confirmation of the award under the TAA, and the TAA's application is not preempted by the FAA. Moreover, despite his argument that the FAA should apply, Vorwerk fails to identify any inconsistency in federal law regarding arbitrator misconduct as grounds for vacating an arbitration award. In addition, the primary legal authority upon which he relies is a case in which the arbitration was conducted under the TAA, and the appellate court analyzed the appellant's allegations of arbitrator misconduct under the TAA and Texas common law. *See IPCO-G. & C. Joint Venture v. A.B. Chance Co.*, 65 S.W.3d 252, 255-56 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). For all these reasons, we will apply the TAA and Texas common law to Vorwerk's arguments on appeal, although we note that the underlying

9

substantive principles of the FAA related to arbitrator misconduct are the same, and thus, the question of which act governs is ultimately immaterial to the outcome here.[18]

## STANDARD OF REVIEW

Texas law has long favored arbitration of disputes. *Prudential Secs. Inc. v. Marshall*, 909 S.W.2d 896, 898 (Tex. 1995). An arbitration award is conclusive on the parties as to all matters of fact and law submitted to the arbitrators because the award has the effect of a judgment of a court of last resort. *See, e.g.*, *CVN Grp., Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002). We presume that an arbitration award is valid, and we may not substitute our judgment merely because we would have reached a different decision. *Ancor Holdings, LLC v. Peterson, Goldman & Villani, Inc.*, 294 S.W.3d 818, 826 (Tex. App.—Dallas 2009, no pet.). Although we review de novo a trial court's judgment confirming an arbitration award, we give "strong deference to the arbitrator with respect to issues properly left to the arbitrator's resolution." *Xtria L.L.C. v. International Ins. Alliance, Inc.*, 286 S.W.3d 583, 591 (Tex. App.—Texarkana 2009, pet. denied) (citing *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 339-40 (5th Cir. 2004)); *see also Centex/Vestal v. Friendship W. Baptist Church*, 314 S.W.3d 677, 683 (Tex. App.—Dallas 2010, pet. denied). Our review focuses on the integrity of the process, not the propriety of the result. *Ancor Holdings*, 294 S.W.3d at 826.

---

[18] The standard of review that we apply to a trial court's judgment confirming an arbitration award and many of the underlying substantive principles are the same whether the TAA or the FAA governs the case. *See Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 56 n.10 (Tex. 2008). Thus, where appropriate, this opinion interchangeably relies on cases that discuss the TAA and the FAA. In addition, we will apply Texas common law where appropriate. *See L.H. Lacy Co. v. City of Lubbock*, 559 S.W.2d 348, 351, 353 (Tex. 1977) (explaining that statutory arbitration is cumulative of common law and whether parties intended statutory or common-law arbitration has been held immaterial if award could be upheld under either system).

Judicial review of arbitration awards is "extraordinarily narrow." *East Tex. Salt Water Disposal Co. v. Werline*, 307 S.W.3d 267, 271 (Tex. 2010). We indulge all reasonable presumptions in favor of the award, and none against, because arbitration is a favored means of dispute resolution, and subjecting awards to judicial review diminishes its benefits by adding expense and delay. *CVN Grp.*, 95 S.W.3d at 238. Review is so limited that a mistake of fact or law or failure to correctly apply the law will not justify vacating an award. *Xtria L.L.C.*, 286 S.W.3d at 591; *Centex/Vestal*, 314 S.W.3d at 683.

**DISCUSSION**

In his first point of error, Vorwerk complains that the trial court erred by confirming the arbitration award because he asserts that the arbitration panel had engaged in procedural misconduct by participating in ex parte communication with Mueck, which prejudiced Vorwerk's rights. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.088(a) (court shall vacate award when arbitrator misconduct prejudices party's rights).[19] Vorwerk contends that Mueck acted as the panel's agent by participating in a substantive communication about the merits that was prejudicial to Vorwerk and effectively denied him a fair and impartial hearing. Williamson County Grain responds that (1) there is no evidence that the panel ever saw the fax; (2) the information in the fax is a summary of information already presented to the panel at the hearing and in its arbitration petition; and (3) the information contained in the fax was beneficial to Vorwerk and detrimental to Williamson County

---

[19] *See also* 9 U.S.C.A. § 10(a)(3) (court may vacate arbitration award when arbitrator misconduct prejudices party's rights).

11

Grain because it identified the amount of grain delivered by Vorwerk for which Williamson County Grain owed payment, and the panel deducted the amount owed to Vorwerk from the award.

The TAA establishes limited grounds for vacating an award.[20] *See id.* § 171.088; *see also Blue Cross Blue Shield of Tex. v. Juneau*, 114 S.W.3d 126, 134 n.5 (Tex. App.—Austin 2003, no pet.) (noting that award that is not within requirements of act may still be valid if it complies with more restrictive common-law procedures for vacating award). A court will vacate an award because of misconduct only in extreme cases. *GJR Mgmt. Holdings, L.P. v. Jack Raus, Ltd.*, 126 S.W.3d 257, 263 (Tex. App.—San Antonio 2003, pet. denied). The conduct must so affect "the rights of the party that it may be said to deprive him of a fair hearing." *Id.* (citing *Mullinax, Wells, Baab & Cloutman, P.C. v. Sage*, 692 S.W.2d 533, 536 (Tex. App.—Dallas 1985, writ ref'd n.r.e.)). Courts have held that neither an arbitrator's receipt of ex parte affidavits or ex parte documents nor an arbitrator's ex parte telephone call to a party's counsel constitute arbitrator misconduct. *See IPCO*, 65 S.W.3d at 257-58 (holding that arbitrator's telephone call was not misconduct); *Mullinax*, 692 S.W.2d at 536 (holding that no misconduct occurred when arbitration committee received back-up documentation after hearing and provided it to complaining party simultaneously with notification of award).

When a party seeks to modify or vacate an arbitration award, it has the burden of bringing forth a complete record and establishing any basis that would warrant vacating the award. *GJR Mgmt.*, 126 S.W.3d at 263. The record before us does not contain a transcript of the arbitration hearing nor is there evidence in the record regarding whether Boerner acted on behalf of the

---

[20] *See also id.* (establishing similarly limited grounds for vacating award under federal statute).

arbitration committee when he requested information from Williamson County Grain. As a result, we do not know whether the fax communication from Mueck to Boerner included new information not already presented to the panel or merely summarized information conveyed at the hearing.[21] Further, Vorwerk has provided no evidence, other than his bare allegation, that Boerner gave the information in the fax to the arbitration panel.

As the party seeking to vacate the arbitration award, Vorwerk bears the burden of establishing arbitrator misconduct that would warrant vacating the award. *See GJR Mgmt.*, 126 S.W.3d at 263 (upholding trial court's denial of motion to vacate because no record supporting claims of arbitrator misconduct). Without a record, we cannot conclusively determine the basis for the arbitrator's award, whether new information was conveyed to the panel in the fax, and if it was, whether it deprived Vorwerk of a fair hearing. *See id.*; *see also Statewide Remodeling, Inc. v. Williams*, 244 S.W.3d 564, 569-70 (Tex. App.—Dallas 2008, no pet.) (affirming judgment confirming award when no arbitration hearing record brought forward to support party's claim that award was inconsistent with evidence). The narrow scope of appellate review of arbitration awards requires us to indulge every reasonable presumption in favor of upholding the arbitration award. *Statewide Remodeling*, 244 S.W.3d at 569-70. Without evidence to the contrary, we must presume that no misconduct occurred, the information in the fax was a summary of information previously

---

[21] Although the actual arbitration record was never admitted into evidence, we note that Williamson County Grain submitted its arbitration petition including exhibits with its response to Vorwerk's motion to vacate. Vorwerk has not contested that Williamson County Grain submitted this information to the arbitration panel or that he submitted a response to the petition. *See* Tex. R. App. P. 38.1(g). One of the attachments to Williamson County Grain's arbitration petition included Williamson County Grain's receipts for Vorwerk's grain deliveries.

13

conveyed to the panel, and the fax communication did not operate to deprive Vorwerk of a fair hearing. Therefore, we cannot conclude that the trial court erred by confirming the award despite Vorwerk's allegation of arbitrator misconduct. Vorwerk's first point of error is overruled.

In his second issue on appeal, Vorwerk asserts that the trial court erred in confirming the arbitration award because the award violated public policy.[22] *See CVN Grp.*, 95 S.W.3d at 239 (holding that arbitration award may be set aside on public-policy grounds only in extraordinary case). Vorwerk claims that the award violates several provisions of the Texas Business and Commerce Code and that these mistakes are so repugnant to public policy that they require vacating the arbitration award. In essence, Vorwerk contends that the arbitration panel ignored certain affirmative defenses available to him under chapters 1 and 2 of the Uniform Commercial Code, which is incorporated into Texas law in title 1 of the Texas Business and Commerce Code.[23] *See* Tex. Bus. & Com. Code Ann. §§ 1.303(a) (course of performance), 2.209 (waiver), .508 (seller's right to cure when delivery has been rejected by buyer and time for performance has not yet expired) (West 2009); *see also id.*

---

[22] He also contends in this issue that the award should be vacated for "gross mistake." Gross mistake is a common-law ground for vacating an award. *See, e.g.*, *House Grain Co.*, 659 S.W.2d at 906. Gross mistake is a mistake which implies bad faith or failure to exercise honest judgment. Again, without a record, "we have no way to judge whether bad faith or failure to exercise honest judgment in fact occurred." *GJR Mgmt. Holdings, L.P. v. Jack Raus, Ltd.*, 126 S.W.3d 257, 264 (Tex. App.—San Antonio 2003, pet. denied).

[23] Vorwerk also argues that sections 2.103(a)(2) and 2.208 of the business and commerce code provide additional public-policy grounds for overturning the trial court's decision to confirm the arbitration award. However, these sections were repealed in 2003. *See* Act of May 19, 1965, 59th Leg., R.S., ch. 721, § 2-103(1)(b), 1965 Tex. Gen. Laws 1, 14, *repealed by* Act of May 22, 2003, 78th Leg., R.S., ch. 542, § 2, 2003 Tex. Gen. Laws 1840, 1851 (repealing Tex. Bus. & Com. Code Ann. § 2.103(a)(2)); Act of May 19, 1965, 59th Leg., R.S., ch. 721, § 2-208, 1965 Tex. Gen. Laws 1, 19, *repealed by* Act of May 22, 2003, 78th Leg., R.S., ch. 542, § 20, 2003 Tex. Gen. Laws 1840, 1854 (repealing Tex. Bus. & Com. Code Ann. § 2.208).

14

§ 1.103 (West 2009) (code is supplemented by common-law principles). It was Vorwerk's burden to present his affirmative defenses to the panel. *See* Tex. R. Civ. P. 94; *see also, e.g.*, *RM Crowe Prop. Servs. Co. v. Strategic Energy, L.L.C.*, 348 S.W.3d 444, 449 (Tex. App.—Dallas 2011, no pet.) (arguing modification of contract and waiver of contract right based on course of dealing and course of performance as affirmative defenses); *Mobile Hous., Inc. v. Stone*, 490 S.W.2d 611, 615-16 (Tex. Civ. App.—Dallas 1973, no writ) (intent to cure as affirmative defense).

An arbitration award may only be vacated on public-policy grounds when the award clearly violates well-defined, fundamental policy. *CVN Grp.*, 95 S.W.3d at 239. To demonstrate that this award contravenes public policy, Vorwerk must show that the arbitration panel wholly disregarded statutory and constitutional requirements related to his affirmative defenses by ruling in favor of Williamson County Grain. *See id.* He has failed to do so. The panel's purported failure to consider Vorwerk's affirmative defenses does not satisfy the high standard required to vacate the arbitration award. There is no statutory or constitutional requirement for the panel to decide in Vorwerk's favor based upon defenses that Vorwerk did not argue and prove at the hearing. But even if the panel had considered and erroneously rejected the defenses—something that is impossible for us to determine without a complete arbitration record—we would not vacate the award for a mere mistake of fact or law. *See id.* (noting that when the facts are disputed, "an arbitrator's mere disagreement with a judge does not violate public policy"); *Xtria L.L.C.*, 286 S.W.3d at 591; *Centex/Vestal*, 314 S.W.3d at 683. Consequently, the trial court did not err by confirming the arbitration award. Vorwerk's second point of error is overruled.

15

## CONCLUSION

Because the trial court did not err in confirming the arbitration award in favor of Williamson County Grain, we affirm the trial court's judgment.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Henson and Goodwin

Affirmed

Filed: February 23, 2012